IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

MONCERRATH GUTIERREZ, on his
own behalf and on behalf of a class of
similarly situated persons; RICARDO
OLIVAS, on his own behalf and on behalf
of a class of similarly situated persons;
SUSANA PALACIOS-VALENCIA, on her
own behalf and on behalf of a class of
similarly situated persons; and
SOMOS UN PUEBLO UNIDO,

       Plaintiffs,

    vs.                                                                No. CIV 14-1050 WJ-KBM

SAN JUAN COUNTY BOARD OF
COMMISSIONERS; and THOMAS
C. HAVEL, in his individual and
official capacities,

       Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO JOIN NECESSARY PARTIES**
**and**
**DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN**

     THIS MATTER comes before the Court on Defendants' Motion to Dismiss For Failure to Join Necessary Parties, or in the Alternative, Motion to Join Necessary Parties, filed January 27, 2013 **(Doc. 6).**   Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is well-taken to the extent that certain parties are necessary parties and should be joined in this lawsuit under Fed.R.Civ.P.19, but the motion is denied as to Defendants' request to dismiss the case for failure to join necessary parties under Rule 19.

BACKGROUND

This is a putative class action brought by three illegal aliens who were detained by agents working for the U.S. Bureau of Immigration and Customs Enforcement ("ICE") in 2012 (two of the Plaintiffs) and 2014 (one Plaintiff) for being in the United States without lawful authority and being subject to deportation or removal from the country.  According to the First Amended Complaint ("Complaint"), ICE agents took the Plaintiffs to the San Juan County Adult Detention Center ("County Detention Center") in Farmington, New Mexico, for a brief period of time, apparently confirmed they were subject to removal from the United States, and then ICE transported them to a facility in Albuquerque for further detention and processing.  Plaintiffs allege that their detentions at the County Detention Center were violations of their Fourth and Fourteenth Amendment rights, and claim that they are entitled to monetary damages.  Plaintiffs also seek a declaratory judgment and injunctive relief requiring release of any individuals held in Defendants' custody based on an immigration detainer issued by ICE and enjoining Defendants from detaining any person in their custody in the future based on an immigration detainer.

Some background of these "immigration detainers" is necessary.  *See* Doc. 6 (Mot.) at 5 (overview and history of ICE immigration detainers).   ICE and its predecessor, the Immigration and Naturalization Service ("INS") have routinely enlisted local law enforcement agencies and local detention facilities throughout the county to hold suspected illegal aliens for ICE.[1]   ICE Detainers (Form I-247) are issued pursuant to 28 CFR §287 in order to advise a federal, state or local law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.  The Detainer is a request to a local law enforcement agency to hold the alien for up to 48 hours in order for the

---

[1] Within DHS, ICE is charged with INS' detention and removal functions. As of March 1, 2003, former INS was abolished and its functions and units incorporated into the DHS.  *Abdulle v. Gonzales*, 422 F.Supp.2d 774, 775 n.2 (W.D.Tex. 2006).

Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

## DISCUSSION

Defendants (or "County") seek to join necessary federal agencies such as ICE and DHS, contending that these parties are required to be joined because rulings in this case would have a direct impact on the interests of the United States and the ability to protect its interests; and also because rulings in this case could expose Defendants to a substantial risk of incurring inconsistent obligations. Plaintiffs contend that no federal entity is a necessary party required to be joined in this case.

**I.     Legal Standard**

A.     Rule 19

The Court's inquiry under Rule 19 is twofold. First, the court must determine whether a person is necessary pursuant to Rule 19(a). Next, and only if the answer to the first question is in the affirmative, the Court must determine, under 19(b), whether to proceed in that person's absence if joinder is not feasible. *Thunder Basin Coal Co. v. Tuco, Inc*., 156 F.R.D. 665, 671 (D.Wyo. 1994); *Salt Lake Tribune Pub. Co. v. AT & T Corp*., 320 F. 3d 1081, 1096 (10th Cir. 2003). A party is necessary within the meaning of Rule 19(a) if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. As the movants, Defendants bear the burden of showing that the United States or its appropriate

agencies and officials are required and are indispensable parties. *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

Defendants seek joinder as an alternative, which would preclude a finding that joinder is not feasible. In fact, Defendants expressly argue that DHS and/or ICE and their officials can be feasibly joined. *See Morales v. Chadbourne*, 996 F.Supp.2d 19 (D.R.I. 2014) (naturalized citizen who was detained on immigration detainer had alleged plausible claim against the United States); *Moreno v. Napolitano*, 2014 WL 4911938, unpubl. opin. (N.D.Ill. 2014) (class of individuals certified in case involving Form I-247 detainers against federal agencies and officials only). Thus, the Court's analysis will focus on whether certain parties should be joined, rather than whether the case must be dismissed because joinder of indispensable parties is not feasible. *See U.S. v. Supreme Court of New Mexico,* 980 F.Supp.2d 1334, 1344 (D.N.M. 2013) (Rule 19 requires dismissal of an action for failure to join a party only where an absent party is found to be indispensable); *see also Direct Supply, Inc. v. Specialty Hosps. of Am., LLC,* 878 F.Supp.2d 13, 23 (D.D.C. 2012) (courts are generally reluctant to grant Rule 12(b)(7) motions, and do so "only when the defect is serious and cannot be cured").

B.  Rule 14 Does Not Apply

Plaintiffs contend that dismissal under Rule 19 does not apply here because Defendants have conceded that federal parties can feasibly be joined. They also suggest that Defendants can implead ICE, DHS or any other federal entities or officials under Rule 14 of the Federal Rules of Civil Procedure, relying on *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010) (citations omitted). The *Peabody* plaintiff sought indemnification against the federal government. The court determined that it was not feasible for the plaintiff to name the Secretary of the Interior as a party, even though the Secretary was a necessary party under a Rule 19

analysis. The court, "in equity and good conscience," concluded that the Secretary could be impleaded under Rule 14 in order to allow the declaratory relief claims to go forward. Thus, the *Peabody* case held that Rule 19 was not intended to require the joinder of potential indemnitors and does not control here because Defendants have not alleged indemnity against the United States.

Rule 14 cannot be used here to implead the United States because Rule 14 only permits a defending party to sue a nonparty "who is or may be liable to [the defending party] for all or part of the claim against it. . . ." Rule 14 does not permit a defending party to name a nonparty solely because the nonparty is or may be liable to the Plaintiffs, such as in the instant case. *See Lopez v. American Baler Co.*, 2013 WL 4782155, unpubl. opin. (D.N.M. 2013); *see also, Hefley v. Textron, Inc.*, 713 F.2d 1487 (10th Cir.1983) (defendant not permitted to implead nonparty solely to allege comparative fault because "impleader is proper only where the third-party defendant's liability is 'in some way derivative of the outcome of the main claim'") (citation omitted). Thus, Plaintiffs are incorrect in alleging that Defendants can simply bring in any federal defendants for any reason through a third-party action. Rather, the issue here is whether rulings in this case will later impact United States immigration policies and practices and expose the County defendants to multiple and inconsistent obligations to the United States and thus, Rule 19 is the appropriate procedural vehicle for addressing this scenario.

C.     Court May Consider Pleadings Outside Complaint

Defendants have attached Exhibits A through I to support their arguments in this motion, but Plaintiffs argue that this is improper because the Court must accept Plaintiffs' allegations in the complaint as true on a motion under Fed.R.Civ.P. 12(b)(7) (failure to join party under Rule 19). However, under Tenth Circuit precedent, a proponent's burden can be satisfied by

providing "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994); *see also Provident Tradesmens Bank & Trust Co.*, 390 U.S. 102, 118 (1968) (Whether an absent party is indispensable "can only be determined in the context of particular litigation"). Thus, the Court will consider Defendants' exhibits in deciding this motion.

**II.     United States' Interest**

Under Rule 19, a person must be joined as a party if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may. . . as a practical matter impair or impede the person's ability to protect the interest." Rule (a)(1)(B)(1).

A.     <u>Immigration Policies</u>

Defendants define the United States' interest as related to the government's immigration policies, procedures and actions with regard to the apprehension and detention of illegal aliens. As the Supreme Court has made clear, immigration issues are left to the United States, not to states or local governments. *Arizona v. U.S.,* 132 S.Ct. 2492, 2505 (2012). Defendants claim that rulings in this case could determine whether the nation's immigration detainer program would be "gutted, scrapped, re-defined, limited or otherwise modified." Doc. 6 at 12.

Plaintiffs contend that all that is at stake here is an interpretation of federal law related to ICE Detainers, as well as how certain counties around the country have chosen to deal with these Detainers. They also argue that, contrary to Defendants' assertions, the ICE Detainer program will not be "gutted" if Plaintiffs prevail in this case. Plaintiffs contend that their claims are not against the United States because they do not seek to have any federal law invalidated, nor do

they seek to have the actions of any federal party evaluated, and so there is no need to bring any federal parties into the case. Rather, they seek a ruling only on the question of whether Defendants actions in unlawfully holding inmates pursuant to ICE Detainers constitute violations of the Plaintiffs' civil rights.[2]

The available case law is not expressly definitive on the subject, but nevertheless offers enough guidance to persuade the Court that the United States is a necessary party in these circumstances. For example, Defendants cite to *Galarza v. Szalczyk,* 745 F.3d 634 (3rd Cir. 2014) where a United States citizen was mistakenly held on an immigration detainer. The plaintiff in *Galarza* named the United States, various ICE agents as well as local entities and officials as defendants. The district court had held the detainers were mandatory and thus the illegal detention was caused by the detainer and not by any custom or policy of the county. On appeal, however, the Third Circuit reversed, holding that the detainer's language could not be interpreted as a mandatory command depriving the local agency of any discretion whether to detain the alien, and thus the detention was caused by actions of the local entity rather than the detainer. Plaintiffs claim that Defendants "incorrectly" cite *Galarza* for their argument that the United States must be a party*,* relying on the Third Circuit's holding which lay the blame of the detention on the county and not the detainer itself. However, on the discrete question of whether the United States was a party to that case, Defendants are correct. The United States was indeed a party in *Galarza*, although plaintiff eventually settled with the United States and other defendants, leaving remaining for appeal only the district court's dismissal of constitutional claims against the county defendants. *Galarza,* 745 F.3d at 638.

---

[2] Plaintiffs claim that, unlike cases cited by Defendants and which involve the legality of actions taken by United States Department of Housing and Urban Development ("HUD"), here they do not seek to evaluate the actions of ICE. Plaintiffs miss the mark. While Plaintiffs do not directly seek a declaration that the ICE immigration detainers are unconstitutional, the impact of this Court's rulings on Defendants' conduct in this case may nevertheless have the same practical effect in the end if ICE discontinues use of the detainers.

*Galarza* also contains some interesting footnote language which Plaintiffs are quick to quote but which does not really shed any light on the issue of whether the United States is a necessary party. The Third Circuit noted in a footnote that the United States or any of its agencies were no longer parties to the case, and also expressed "doubt that the U.S. Government and its immigration agencies would disagree with our interpretation of the regulation" (which was that the detainer did not mandate detention, nor did it deprive the county of discretion in deciding whether to do so). 745 F.3d at 639, n.3. The court's comment was based on the fact that the Secretary of DHS "and other federal officials" stated in a discovery request for admission that "ICE has no legal authority to require state o[r] local law enforcement to detain an individual during the 48-hour detention period." *Id.*

What this Court takes away from the *Galarza* footnote is that, regardless of the court's conclusion on the merits of that case, the United States was still at one point a party and was recognized to have had a stake in the outcome. Reading more into the language would be not be fruitful for either party, because while Plaintiffs place their faith in footnote 3, there is language in the dissent that expresses frank concern that the United States was not available to be heard on the appeal since it had settled with plaintiff by then, and which can be read to mean that the United States should have remained a party in the case:

> I am deeply concerned that the United States has not been heard on the seminal issue in this appeal, **an issue that goes to the heart of the enforcement of our nation's immigration laws**. And make no mistake about it. The conclusion reached by my friends in the Majority that immigration detainers issu**e**d pursuant to 8 C.F.R. § 287.7 do not impose any obligation on state and local law enforcement agencies to detain suspected aliens subject to removal, but are merely requests that they do so, **has enormous implications and will have, I predict, enormous ramifications.**

*Galarza*, 745 F.3d at 645-46 (Barry, J, dissenting) (emphasis added).

Plaintiffs claim that this lawsuit is a mere matter of interpretation of federal regulations related to ICE detainers, without any need to have the United States weigh in on the issue. They bring several cases to the Court's attention which they claim demonstrate that the United States is not a required party in cases involving the lawfulness of detentions by local law enforcement agencies pursuant to ICE detainers. For example, Plaintiffs point out that no federal entity or official was a party in *Miranda-Olivares v. Clackamas County*, 2014 WL 1414305 (D. Or. Apr. 11, 2014). In that case, the court held that ICE Detainers are not mandatory and that a county's detention of an individual based solely on an ICE Detainer violated the individual's Fourth Amendment rights. However, the *Miranda-Olivares* case does not sway the Court. Aside from the fact that it is an unpublished decision, there is no indication that the *Miranda-Olivares* plaintiffs were seeking anything other than money damages, unlike Plaintiffs in the instant case. It is clear that this lawsuit seeks to affect and change the policies and practices of the United States, not just the past efforts by the County to cooperate with the United States. The Complaint expressly seeks a judgment enforcing broad injunctive relief concerning not only any person currently being detained on the basis of an ICE Detainer, *see* Compl., ¶¶ 64-71, but also enjoining Defendants from detaining any individual *in the future* based on an immigration detainer, ¶¶ 67(b).[3]

Plaintiffs also insist that they are not seeking to evaluate the actions of any federal party (Doc. 11 at 7) or to have any federal law invalidated (Doc. 11 at 6). However, while Plaintiffs

---

[3] Also, the *Miranda-Olivares* court noted that "pre-1010 ICE detainers contained the word 'require' that does not appear anywhere in the current version. 2014 WL 1414305, at *7. However, the Form I-247 issued in this case states that "federal regulations (8 CFR 287.7) "**require** that you detain the alien for a period not to exceed 48 hours." Ex. D (emphasis added). This difference in the language on the detainer forms is yet another reason why *Miranda-Olivares* is distinguishable from the instant case. It is not clear whether the form used to detain Plaintiffs in this case is defunct, but the wording on that form is relevant to the issues raised, since Defendants in this case allegedly detained Plaintiffs based on a detainer form issued by ICE.

do not specifically make such claims, it should be obvious that this is exactly where this case is headed. If this Court were to hold that ICE Detainers are not to be honored by the County, the impact would fall immediately and directly on ICE, which would stop issuing detainers, because it would know that the County would not honor them, or ICE would take legal or other action to seek the County's cooperation on detainers. Defendants have presented the Court with sufficient evidence of this impact. *See, e.g.*, Doc. 6-3 (statement on ICE website that detainers are a "critical" immigration enforcement tool for ICE and that ICE "relies on the cooperation of our state and local law enforcement partners in this effort"); Doc. 6-7 (letter from ICE Director to Cook County, Ill. Board of Commissioners, threatening county with loss of federal funds if county declined immigration detainer requests and stating that refusing to honor detainers "undermines public safety").

B.  Plaintiffs Interests Are Adverse to ICE's Position

Plaintiffs suggest that the United States is aligned with their position. *See* Doc. 11 at 7 ("Plaintiffs' interests are not necessarily adverse to those of ICE"). The Court agrees with Defendants that this contention is rather incredible. Plaintiffs were detained based on ICE detainers that were issued pursuant to United States Government immigration policy, and they are alleging illegal detention based on those detainers. Also, the County is in no position to advance the interests of the United States because it does not and cannot determine immigration policy; its actions have been solely as a partner or agent enlisted by the United States so that the United States can carry out national immigration policy. *Arizona v. U.S.,* 132 S.Ct. 2492, 2505 (2012).

Regardless of whether the United States exceeded its constitutional authority by enlisting local law enforcement agencies as partners to assist in the detention of illegal aliens, clearly the United States should be made a party to explain and defend its actions.

Both parties cite to *Wyandotte Nation v. City of Kansas City, Kansas*, which was a lawsuit filed by an Indian tribe to quiet title to land. 200 F.Supp.2d 1279 (D.Kan. 2002). The court in *Wyandotte* observed that "[m]ost courts finding that the United States was a necessary and indispensable party have noted that the United States held an interest adverse to that of the tribe." *Id.* at 1296. Plaintiffs rely on the case for the proposition that the United States is not a necessary party, but the facts in *Wyandotte* are not similar to the facts here. The court in that case confronted the unusual situation in which the United States was initially a party, and the parties then agreed to its dismissal. Also, the United States was no longer claiming an interest in the action, so there was no basis to conclude that the United States' ability to protect its interest had been impeded. This is not the situation presented in the instant case. The United States' position is not of record in this case because it has never been a party. Defendants have presented information supporting their contention that Plaintiffs' position is adverse to the actions of ICE, and thus Plaintiffs cannot step in to advocate for ICE. There is also no factual support for the position that ICE would concede that it acted illegally or unconstitutionally in detaining Plaintiffs or requesting that the County hold Plaintiffs until ICE officials were able to retrieve Plaintiffs to be transported to an ICE holding facility. If Plaintiffs argue that their interests are aligned with ICE, then ICE should be called into the case to explain whether this is in reality their position.

C.      Identification of Necessary Parties

Plaintiffs also contend that Defendants "never precisely identify which parties they contend are required to be joined." Doc. 11 at 3. Defendants did not furnish an enumerated list of proposed parties, but in their motion, Defendants stated that Plaintiffs' Complaint:

> directly challenges the constitutionality of certain policies and procedures of the **United States Department of Homeland Security ("DHS") and the U.S. Bureau of Immigration and Customs Enforcement ("ICE")** and the implementation of those policies and procedures with regard to the enforcement of United States immigration laws.

Doc. 6 at 1-2 (emphasis added). If mentioning DHS and ICE was not specific enough to identify the appropriate federal agencies and individuals whom Defendants seek to enjoin, Defendants reiterate in their reply:

> Defendants' motion makes it abundantly clear in great detail that the allegedly unconstitutional immigration detainers were issued by ICE and its agents, and that ICE is a department of the United States Department of Homeland Security ("DHS"). Plaintiffs' counsel already knew this, of course, and they do not suggest otherwise. **Defendants also cited for Plaintiffs several cases in which DHS, ICE and certain Federal officials have been named as parties** with regard to the issuance and enforcement of immigration detainers. . .
>
> Consequently, at a minimum, it is clear that ICE, an agency of DHS, is the entity that routinely issued and still issues immigration detainers, requests the County's compliance with detainers, took these particular Plaintiffs into custody for transport the County Detention Center in the first place, requested that the Detention Center hold the Plaintiffs for ICE under Federal law, paid the County for holding the Plaintiffs, and then continued the detention of the Plaintiffs upon their release from the County Detention Center to ICE . . . **ICE and DHS have been named as defendants in other cases involving immigration detainers, and they clearly are the appropriate and necessary parties to be named by Plaintiffs as defendants in this case.**

Doc. 12 at 4-5 (emphasis added). Based on this information, the Court finds that Defendants have sufficiently identified the parties whom they propose to have joined as necessary parties.

Whether Plaintiffs characterize the ICE Detainer as a request or a requirement, Plaintiffs ask this Court to declare that their detentions based on these detainers are prohibited by the Fourth and Fourteenth Amendments. Compl. at 14-15. In these claims, Plaintiffs pose a direct

12

challenge to the legality and effect of a law enforcement tool adopted and implemented by the United States for immigration enforcement. Therefore, because the Court's rulings in this case would have a direct impact on the United States' interest in immigration enforcement, the Court finds that federal agencies which direct and enforce these interests (namely, DHS and ICE) are necessary parties which should be joined under Rule 19.

D.  Contracts with United States

Defendants also contend that the United States is a necessary party because Plaintiffs' claims involve construction of U.S. Government contracts. The contracts at issue obligate the County to accept certain detainees and the federal government subsequently reimburses the County for expenses incurred. *See* Docs. 6-8 and 6-9 (Exs. H & I). Plaintiffs claim that their detentions were unlawful, which necessarily brings these contracts into the foreground, and the United States is therefore a necessary party because it is a party to the contract. *See United Keetoowah Band of Cherokee Indians v. Kempthorne*, 630 F.Supp.2d 1296, 1301 (E.D. Okla. 2009), citing *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 540 (10th Cir.1987) ("[a] party to a contract is the quintessential 'indispensable party'") (cited case omitted).

Plaintiffs disagree, contending that this lawsuit does not require the Court to construe or interpret those contracts, nor do Plaintiffs seek to set aside those contracts. Again, Plaintiffs ignore the obvious. While they would prefer to view the County's allegedly unconstitutional conduct in isolation, the fact is that the County's actions are inseparable from their actions in carrying out certain obligations under contracts entered into with the federal government. Therefore, the existence of these contracts is a basis, although not the only basis, for joining the United States in this action.

III.  **Risk of Defendants' Exposure to Inconsistent Obligations**

Under Rule 19, a party can be a required or necessary party if the "person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Begay v. Public Service Co. of N.M.,* 710 F.Supp.2d 1161 (D.N.M. 2010); Fed.R.Civ.P. 19(a)(1)(B) and 19(a)(1)(B)(ii).

Plaintiffs contend that Defendants have not explained what these potential multiple or inconsistent obligations might be, but the Court is satisfied that Defendants have provided an adequate portrayal of how the County would be caught in a legal cross-fire in trying to carry out its obligations under its agreements with the federal government. Form I-247 detainers remain a significant tool for ICE's enforcement of immigration laws, and the agreements between the County and the federal government remain in effect. This being the case, the County could be subject to future claims by aliens, or even by the federal government itself if the United States is not bound by rulings in this case. The detentions at issue here are driven by the ICE detainers, and if the detainers continue to be issued, the County may find itself mired in lawsuits by plaintiffs alleging unconstitutional detention and by the federal government alleging breach of its agreement with the County.

## CONCLUSION

In sum, the Court finds and concludes that the United States (or its appropriate agency) is a necessary party and should be joined in this lawsuit. This case could define the constitutional parameters of United States immigration policy, at least with regard to the use of detainers and the detention of illegal aliens. Because the Court's rulings in this case would have a direct impact on the United States' interest in immigration enforcement, federal agencies which direct and enforce these interests (DHS and ICE) are therefore necessary parties under Rule 19.

Whether the United States exceeded its constitutional authority by enlisting local law enforcement authorities, such as the presently named Defendants in this case, to assist in the detention of illegal aliens, the United States should be made a party to explain and defend its actions.  In addition, the County is obligated by contracts with the federal government to accept certain detainees and the existence of these contracts also requires the United States' presence in this lawsuit.

Defendants seek to join "appropriate federal agencies or officials," specifically, ICE and DHS.  The Court does not presume to advise as to the manner in which these defendants should be joined, i.e., whether joinder would be subject to a claim under the Federal Tort Claims Act ("FTCA"), or against federal government officials under *Bivens*.[4]

**THEREFORE,**

**IT IS ORDERED** Defendants' Motion to Dismiss For Failure to Join Necessary Parties, or in the Alternative, Motion to Join Necessary Parties **(Doc. 6)** is hereby GRANTED as to Defendants' motion to join certain federal entities as necessary parties under Rule 19, but DENIED as to Defendants' request to dismiss the lawsuit for failure to join necessary parties.

_____
UNITED STATES DISTRICT JUDGE

---

[4] *See, e.g., Uroza v. Salt Lake County*, 2013 WL 653968, at *2 (D.Utah,2013) (negligence claims against United States asserted FTCA and claims against the individual federal defendants brought as *Bivens* action); *Galarza v. Szalczyk*, 745 F.3d at 638 (same); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).