IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————

SUSANA PALACIOS-VALENCIA, *et al.*,

        Plaintiffs,

v.                                                                                   No. CV 14-01050 WJ/KBM

SAN JUAN COUNTY BOARD
OF COMMISSIONERS, *et al.*,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING
## FEDERAL DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendants Department of Homeland Security and U.S. Immigration and Customs Enforcement's ("Federal Defendants") Motion to Dismiss (**Doc. 22**). Having reviewed and considered the parties' written and oral arguments and the applicable law, the Court finds that Defendants' Motion to Dismiss is not well taken, and therefore **DENIED**, as herein described.

### BACKGROUND

The events which give rise to this federal lawsuit occurred in the City of Farmington, County of San Juan, State of New Mexico. Plaintiff Susana Palacios-Valencia ("Ms. Palacios") was arrested by Farmington City Police on April 13, 2012 on a bench warrant for failing to pay a traffic ticket. Farmington City Police detained Ms. Palacios and transported her to the San Juan County Detention Center. The Farmington City police officer also contacted U.S. Immigration and Customs Enforcement ("ICE"). The following day, ICE issued an immigration detainer for

Ms. Palacios. An immigration detainer is issued pursuant to 8 C.F.R. § 287.7. The detainer requests a local law enforcement agency to hold the subject for a period not to exceed 48 hours (excluding Saturdays, Sundays, and holidays) beyond the time when the subject would have been otherwise released from law enforcement custody in order to allow the Department of Homeland Security ("DHS") to assume custody. On April 16, 2012, Ms. Palacios appeared before a county Magistrate Judge. The Federal Defendants allege that Ms. Palacios was ordered to serve eight days of jail time, and attached a copy of the final order from the Magistrate Court (**Doc. 22-1**). Plaintiffs allege in their Complaint that Ms. Palacios was advised by the Magistrate Judge that she would be released notwithstanding the immigration detainer. At oral argument, however, Plaintiffs appear to concede that she was sentenced to jail at the hearing before the Magistrate Judge, but argue that Ms. Palacios received three days credit for time served, thus requiring her to serve five additional days starting on April 16, 2012. On April 23, 2012, the San Juan County Detention Center released Ms. Palacios into the custody of ICE. The following day, ICE issued Ms. Palacios a Notice to Appear, placed her in immigration removal proceedings, and released her under a $1,500 bond. On February 10, 2015, Ms. Palacios' immigration proceedings were administratively closed.

On April 13, 2015, Ms. Palacios and Somos Un Pueblo Unido ("Plaintiffs"), an immigrant rights organization, filed a Second Amended Class Action Complaint (**Doc. 17**) against Defendants San Juan County Board of Commissioners and Thomas C. Havel ("County Defendants"), and the Federal Defendants. Plaintiffs' Second Amended Complaint seeks certification pursuant to Federal Rule of Civil Procedure 23 for all persons who were detained in the past three years at the San Juan County Detention Center pursuant to an immigration detainer. Plaintiffs further claim civil rights violations by the County Defendants under 42

U.S.C. § 1983, declaratory and injunctive relief against the County Defendants, and declaratory relief against the Federal Defendants. Plaintiffs seek damages, attorney's fees, and costs related to these claims. Plaintiffs' Second Amended Complaint arose out of the Court's March 26, 2015 Order (**Doc. 16**) finding DHS and ICE to be necessary parties to the lawsuit.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Rule 12(b)(1) motions for lack of subject matter jurisdiction take two forms: a facial attack on the sufficiency of the allegations in the complaint related to the establishment of subject matter jurisdiction, or, going beyond the allegations in the complaint and challenging the jurisdictional facts upon which subject matter jurisdiction relies. *See Holt v. United States*, 46 F.3d 1000, 1002–003 (10th Cir. 1995). Where the Rule 12(b)(1) motion constitutes a facial attack on the allegations of subject matter jurisdiction, all allegations in the complaint are presumed to be true. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When the attack is aimed at the jurisdictional facts themselves, the Court does not presume the truthfulness of the complaint's factual allegations, but rather, has wide discretion to consider documents outside the complaint to resolve disputed jurisdictional facts under Rule 12(b)(1). *See Holt*, 46 F.3d at 1003.

Here, the Federal Defendants' first argument regarding sovereign immunity is a facial attack on the sufficiency of the allegations in the Complaint. The Federal Defendants' second argument regarding standing and third argument implicating the mootness doctrine are supported with evidence outside the pleadings, and thus challenge the jurisdictional facts upon which subject matter jurisdiction relies. Accordingly, no presumption of truth attaches to Plaintiffs' factual allegations. *See id.*

**DISCUSSION**

The Federal Defendants bring three main arguments in support of their Motion to Dismiss. First, the Federal Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiffs' claims. Second, the Federal Defendants assert that Plaintiffs lack standing to raise the claims asserted in the Complaint. Finally, the Federal Defendants argue that Plaintiffs' claims are now moot. The Court addresses each of these arguments in turn.

**I.      Lack of Subject Matter Jurisdiction**

In their Motion to Dismiss, the Federal Defendants methodically evaluate each basis upon which Plaintiffs may have pled a waiver of sovereign immunity to show that a waiver has not been alleged. However, as pointed out by the Plaintiffs and the County Defendants, Plaintiffs' "failure" to plead sovereign immunity arises from an apparent typographical error in the Complaint in which Plaintiffs cited to 5 U.S.C. § 7 rather than 5 U.S.C. § 702 of the Administrative Procedure Act. In their Reply and at oral arguments, the Federal Defendants agree that 5 U.S.C. § 702 of the Administrative Procedure Act in conjunction with 28 U.S.C. § 1331 waives sovereign immunity for declaratory relief against the Federal Defendants.

The Federal Defendants half-heartedly argue, for the first time in their Reply, that the Court must limit its review in this case to the administrative record to determine whether the decision to issue the immigration detainer was arbitrary and capricious. At oral argument, the Federal Defendants did not address this issue and freely referenced documents outside the so-called administrative record. Even on the merits, the Court finds that the presence of San Juan County as a Defendant allows this case to proceed outside of the strictures of APA review.

## II.     Plaintiffs Lack Standing

The Federal Defendants argue that both Ms. Palacios and Somos Un Pueblo Unido ("Somos") lack standing. Plaintiffs seek a declaratory judgment that the actions of the Federal Defendants violated the Fourth Amendment and exceeded the Federal Defendants' authority. The Federal Defendants concede that Ms. Palacios may have standing to seek retrospective relief for her past detention. However, as Ms. Palacios seeks declaratory relief, she must "demonstrate a continuing injury to establish standing for prospective relief." *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011). The Federal Defendants argue that Ms. Palacios lacks standing unless she can demonstrate that she would be arrested again, placed in a detention facility that honors ICE immigration detainers, and that ICE would subsequently issue an immigration detainer. These speculative allegations are insufficient to confer standing. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004) ("A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction."). The Federal Defendants also note that when ICE issued an immigration detainer for Ms. Palacios, DHS operated under the Secure Communities program. Since then, DHS has directed ICE to discontinue Secure Communities and instead implement the Priority Enforcement Program ("PEP"). Rather than request a local law enforcement agency to hold an individual beyond the time at which they would otherwise be released, the PEP now only requests that the local law enforcement agency notify ICE that the release of an individual is pending. The PEP also requires ICE to identify the enforcement priority under which the individual falls. The Federal Defendants thus argue that the scenario in which Ms. Palacios would again become subject to an immigration detainer becomes even more unlikely with the changes made to the immigration detainer program.

Turning to Somos, the Federal Defendants argue that Somos cannot demonstrate an injury-in-fact in light of the doctrine of organizational standing. In order for Somos to have standing, Somos must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Utah Ass'n of Counties v. Bush*, 455 F.3d 1094, 1099 (10th Cir. 2006) (citation omitted). The Federal Defendants argue first that Somos does not present any evidence to demonstrate that any of its members have standing to bring a claim against the Federal Defendants. Plaintiffs have not alleged that Ms. Palacios is a member of Somos, nor does she have standing in her own right. Second, Somos cannot meet the third prong of organizational standing, as the claim asserted and relief requested requires the participation of individual members in the lawsuit. Plaintiffs base their claim on a Fourth Amendment violation, which is dependent on the individualized nature of the probable cause determination made before each immigration detainer is issued. *See Olsen v. Layton Hills Mall*, 312. F.3d 1304, 1312 (10th Cir. 2002).

Plaintiffs dispute that they lack standing. They argue first that the Federal Defendants are incorrect in asserting that Plaintiffs must demonstrate a continuing injury in order to have standing to bring claims for declaratory relief. While the Federal Defendants may have discontinued the Secure Communities program, the declaratory relief they seek is as much retrospective as prospective. Plaintiffs seek a judgment declaring that detention based solely on an immigration detainer violates the Fourth Amendment and that DHS and ICE exceeded their authority in placing immigration detainers on Ms. Palacios and other Somos members. Plaintiffs also note that this Court previously determined that the Federal Defendants were proper parties

to explain and defend their actions, helping refute that the Plaintiffs do not have standing (**Doc. 16**). Further, Plaintiffs also seek monetary damages against the County Defendants for actions taken prior to the discontinuation of the Secure Communities program. Standing is available for retrospective declaratory relief where such relief is "intertwined" with a claim for monetary damages. *See Wisness v. Yocom*, 433 F.3d 727, 735 (10th Cir. 2006). Finally, Plaintiffs argue that the immigration detainer in Ms. Palacios' name was still in effect at the time the original Complaint was filed, and thus, she had a reasonable and well-founded fear that she could be subjected to further detention based on the immigration detainer.

Turning to Somos, Plaintiffs assert that they meet each of the three prongs used to evaluate associational standing. First, the members of Somos would otherwise have standing to sue in their own right. Second, as an immigrant rights organization founded in 1995, the interests it seeks to protect are germane to its purpose. Third, because Somos asserts only declaratory relief against the Federal Defendants, individual participation is not necessary. *See Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1305–06 (11th Cir. 2010) ("Because these claims can be proved with the limited participation of organization members, the organization has standing to assert them here."). Plaintiffs assert that any continued detention based solely on an immigration detainer is unconstitutional, regardless of the individual circumstances. Thus, an individualized determination of whether an immigration detainer violates the Fourth Amendment is unnecessary.

In their Reply, the Federal Defendants argue that Plaintiffs cannot combine a claim of monetary damages against the County Defendants with a declaratory judgment against the Federal Defendants. As there is a factual distinction as how Plaintiffs claim each defendant violated the Constitution, Plaintiffs cannot combine their claims against separate defendants in

order to create standing against the whole. The Federal Defendants also argue that the language in the immigration detainer states that it does not last beyond 48 hours, and likewise, ceases to exist once it has been executed. Once ICE took Ms. Palacios into custody, her detainer became inactive as it had been fulfilled.

  The Court finds Plaintiffs' reasoning more persuasive on several grounds. As to Ms. Palacios' individual standing, the Court finds that Ms. Palacios' allegations are not so speculative as to be insufficient to confer standing. The Federal Defendants argue that the language in the immigration detainer states that it does not last beyond 48 hours, and likewise, ceases to exist once it has been executed. However, the immigration detainer's "Notice To The Detainee" contains no such information. It states only that: "If DHS does not take you into custody during that additional 48 hour period, not counting weekends or holidays, you should contact your custodian . . . to inquire about your release from state or local custody." The immigration detainer does not contain any information about self-expiration after 48 hours, nor that it ceases to exist once it has been executed.

  Thus, Ms. Palacios reasonably could have feared that she could be subjected to further detention based on the immigration detainer. Further, Plaintiffs filed their Complaint on November 19, 2014. Ms. Palacios' immigration proceeds were not administratively closed until February 10, 2015. As standing "must be analyzed from the facts as they existed at the time the complaint was filed," Ms. Palacios reasonably could have believed that the same document would be applied if she were detained again. *See Tandy v. Wichita*, 380 F.3d 1277, 1285 (10th Cir. 2004). Additionally, at the time Plaintiffs filed their Complaint, the Secure Communities program was still in effect. Thus, the Federal Defendants' arguments regarding the PEP and its effect on the likelihood of an immigration detainer being issued do not apply. Ms. Palacios had

already been detained at the San Juan County Detention Center, which honored immigration detainers, and had already been subject to an immigration detainer. At the time the Complaint was filed, administrative proceedings against Ms. Palacios were still open and the Secure Communities program was still in effect. She could have reasonably believed that the immigration detainer against her was still active and would be applied if she were detained again. Accordingly, the Court finds that Ms. Palacios has standing to bring claims against the Federal Defendants.

The Court also finds that Somos satisfies the three-prong test to satisfy associational standing, which requires that an organization show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Utah Ass'n of Counties v. Bush*, 455 F.3d 1094, 1099 (10th Cir. 2006). While not pled in their Complaint or contained in their Response, at oral argument, Plaintiffs asserted that Ms. Palacios was a member of Somos. If so, because this Court has found that Ms. Palacios has standing, the first prong has been met. Regardless, Somos does not need to plead the identities of specific members who would have individual standing. *See NCAA v. Califano*, 622 F.2d 1382, 1388–89 (10th Cir 1980). Unlike in *NCAA v. Califano*, which questioned which side of the lawsuit the association's members would agree with, there is no doubt that members of Somos would support ending immigration detainers. *See id*. at 1392. Therefore, Somos need not allege the identifies of specific members. Plaintiffs have alleged that Somos has an active membership in ten New Mexico counties, including members who could be subject to immigration detainers. The Court therefore finds that Somos has satisfied the first prong. As to the second prong, Somos "has been actively involved in advocacy, legislation, and

9

working with municipalities and detention facilities for the protection of immigrants' rights" (**Doc. 3**, at ¶ 5). It is clear that the interest Somos seeks to protect is germane to the organization's purpose. Thus, the second prong has been satisfied.

Turning to the third prong, Somos brings this action for equitable relief only (**Doc. 17**, at ¶ 5). The Court finds persuasive Plaintiffs' argument that an individualized determination of whether an immigration detainer violates the Fourth Amendment is not necessary for Somos' claims, as it asserts that detention based on any immigration detainer is unconstitutional. As individual participation is not necessary, Somos has satisfied the third prong. *See Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1305–06 (11th Cir. 2010). Accordingly, the Court finds that Somos has associational standing to bring claims against the Federal Defendants.

### III.    Plaintiffs' Claims are Moot

Upon Ms. Palacios' release from detention, ICE placed Ms. Palacios in removal proceedings. On February 10, 2015, an immigration judge administratively closed those proceedings. Thus, the Federal Defendants argue that the threat that Ms. Palacios will be detained by ICE in the future has been removed. Additionally, as described above, DHS has directed ICE to discontinue Secure Communities and instead implement the PEP, which requests only that the local law enforcement agency notify ICE that the release of an individual is pending. The PEP also requires ICE to identify the enforcement priority under which the individual falls. The Federal Defendants argue that the "withdrawal or alteration of administrative policies can moot an attack on those policies." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1117 (10th Cir. 2010) (citation omitted). Thus, the Secretary's policy memo moots Plaintiffs' claims for declaratory judgment.

The Plaintiffs' Response argues that the Federal Defendants' actions are merely the "voluntary cessation of an alleged illegal practice which the defendant is free to resume at any time," an exception to the mootness doctrine. *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008). "The party asserting mootness bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Rio Grande Silvery Minnow*, 601 F.3d at 1116 (citations omitted). To overcome this exception, the party must demonstrate that there is no reasonable expectation that the alleged violation will recur, and that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *See id*. at 1115 (citations omitted). The County Defendants, eager to keep the Federal Defendants in this litigation, argue that even with the PEP program in place, the immigration detainers in question are still issued. The regulation that authorizes detainers under the Code of Federal Regulations has not changed and is still valid law, and the statute that underlies detainers has not changed either. The County Defendants argue that the immigration detainer policy has changed or been altered five times since 2010, so it is speculative for the Federal Defendants to argue that the policy will not change again.

In a Supplemental Response filed by the County Defendants (**Doc. 39**) on January 20, 2016, the County Defendants note their discovery of a previously unknown detainer form referred to as "Form I-247X." The County Defendants argue that a memo, allegedly from ICE Director Sarah R. Saldaña, indicates that the new detainer form applies to aliens "who are outside the narrower PEP priorities" (**Doc. 39-1**). Thus, the PEP program has already been modified or even disregarded in certain aspects. The Federal Defendants respond that Form I-247X conforms to the structure used by the notification and detainer forms under the PEP, in that it may be used only as a request for notification. If used as a detainer, it must specify that

there is sufficient probable cause to find that the subject is a removable alien. Thus, the Federal Defendants argue that Form I-247X conforms to the requirements of the PEP and therefore is not a change to the immigration detainer policy.

The Court finds that regardless of the exact application or use of Form 1-247X, the Federal Defendants have not met the "heavy burden" of persuading this Court that the challenged conduct cannot reasonably be expected to start again. *See Rio Grande*, 601 F.3d at 1116 (citations omitted). The immigration detainer program has already been altered or modified several times. In the fall of this year, a new President will be elected. That President can, and likely will, alter federal immigration policy, including the scope and breadth of the issuance of immigration detainers. The Federal Defendants have not demonstrated that the PEP program has completely and irrevocably eradicated the effects of the violations alleged by Plaintiffs, nor have they demonstrated that there is no reasonable expectation that an immigration detainer of the kind used to detain Ms. Palacios will recur. Therefore, the Court finds that the Federal Defendants have not mooted Plaintiffs' claims.

**THEREFORE,** for the reasons stated herein, the Federal Defendant's Motion to Dismiss is hereby **DENIED**.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE