IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSANA PALACIOS-VALENCIA, on
her own behalf and on behalf of a
class of similarly situated persons; and
SOMOS UN PUEBLO UNIDO,

        Plaintiffs,

v.                                                  CIV 14-1050 WJ/KBM

SAN JUAN COUNTY BOARD OF
COMMISSIONERS; THOMAS C.
HAVEL, in his individual and official
capacities; the DEPARTMENT OF
HOMELAND SECURITY; and U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant San Juan County's ("the

County Defendants") Motion to Compel Federal Defendants to Provide Discovery

Answers (*Doc. 81*), filed July 18, 2016.[1] Having considered the parties' positions as well

as all pertinent authority, the Court will grant the Motion in part.

### I.    BACKGROUND

This putative class action arises from the issuance of Form I-247 or "Immigration

Detainers" by United States Immigration and Customs Enforcement ("ICE") agents to

the San Juan County Detention Center ("SJCDC"). *See Doc. 60* (Third Amended

Complaint) at 5. Plaintiff Palacios-Valencia was held pursuant to a Detainer, and seeks

---

[1] In their response to the County Defendants' Motion to Compel, the Federal Defendants made
a Cross Motion to Compel, *see Doc. 89*; however, this Motion has been withdrawn. *Doc. 102*.

to represent a class of persons "who in the period from three years prior to the date of the filing of the Class Action Complaint to the present and continuing until this matter is adjudicated and the practices complained of herein cease, were detained at the SJCDC pursuant to an Immigration Detainer." *Id.* at 10.

Plaintiffs allege that under clearly established law the Detainers are not legally enforceable, but are merely administrative requests. *Id.* at 7. Notwithstanding, Plaintiffs assert that ICE agents routinely issued Immigration Detainers to the County Defendants, and allege that the County had a policy, practice and custom of detaining persons based solely on Immigration Detainers, and of not permitting detainees in their custody to be released if they had an Immigration Detainer lodged against them. *Id.* at 6. Plaintiffs seek damages against the County Defendants for the violation of their civil rights. *Id.* at 13-14. Plaintiffs also seek declaratory and injunctive relief against the County Defendants and declaratory relief against the Federal Defendants. *Id.* at 15-18.

The instant dispute is between the County Defendants and Federal Defendants. One of the positions taken by the County in this lawsuit is that "it played no role in immigration policy and its actions were solely as a partner or agent enlisted by the United States so that the United States could carry out national immigration policy." *Doc. 81* at 2. Thus, the County Defendants submitted interrogatories to the Federal Defendants which "pertain to the evolution of the Federal Defendants' position on the role of local detention facilities and law enforcement agencies in the detention process and whether the Immigration Detainers were presented as requiring or requesting assistance[.]" *Id.* County Defendants assert that the Federal Defendants' answers to these interrogatories were incomplete and that the legal objections asserted are

ungrounded. For their part, the Federal Defendants argue that the County Defendants'

interrogatories seek information which is not proportional to the needs of this case and

which is privileged.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery,

providing that

> [p]arties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of
> the case, considering the importance of the issues at stake in the action,
> the amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery in
> resolving the issues, and whether the burden or expense of the proposed
> discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be

admissible in evidence to be discoverable." *Id.*

Parties may issue interrogatories pursuant to Federal Rule of Civil Procedure 33,

which "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R.

Civ. P. 33(a)(2). A responding party may object to an interrogatory; however, the

grounds for an objection "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). A

party may move to compel the answer to an interrogatory under Rule 33 if good faith

attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iii).

## III.    ANALYSIS

### A) Interrogatory Nos. 3, 4 and 5

The County Defendants' third interrogatory requests the identification of any

document in which the Federal Defendants took the position that an Immigration

Detainer "mandated or required" a local law enforcement agency to detain an individual.

*Doc. 81-1* at 2. The fourth is identical, but seeks the identification of any such documents taking that position as to Detainers presented to the County Defendants, specifically. *Id.* at 3. The fifth is similar to the third and the fourth, but seeks identification of documents wherein the Federal Defendants "requested the County entity to detain an individual, but stated that the decision to detain the individual was left to the discretion of the County entity." *Id.* at 4-5. The time period for these requests is 2003 to the present. *Doc. 97* at 1. The scope of the interrogatories has been narrowed "to information generated at the agent level or above from the ERO [("Enforcement and Removal Operations")] field office in El Paso, Texas." *Id.*

The Federal Defendants objected to the interrogatories on the grounds that "the time period requested is overly broad, and the request is unduly burdensome, irrelevant, and not proportional to the needs of the case, as it seeks information that does not pertain to the named Plaintiff[.]" *Doc. 81-1* at 2-3. The basis for the Federal Defendants' over-breadth objection as to the time period stems from the fact that "the Court has not certified a proposed class" and that, even if a class is certified, the relevant time period only extends from November 19, 2011, (Plaintiff's proposed date for the inception of the proposed class) to the present. *Id.*

The Federal Defendants' overly-burdensome objection relies on the declaration of Adrian Macias, Acting Deputy Assistant Director for Domestic Operations in the Office of Enforcement and Removal Operations ("ERO"). *See Doc. 89* at 5, *Doc. 89-1.* According to Deputy Assistant Director Macias, these  requests would require identifying "possibly hundreds of current and former ERO employees who might have sent or received emails related to the subject matter of the interrogatories" and that

ICE's Chief Information Officer would then "be required to search all storage systems for the emails sent or received by those former employees[.]" *Doc. 89-1* at 2. Thereafter, "it might be possible to filter them by keyword or search term in order to reduce the number of documents that must be reviewed individually for actual responsiveness." *Id.* at 3.

The Court first finds that the information sought is relevant. County Defendants have asserted that they relied upon the Federal Defendants' representation that holding an individual pursuant to an Immigration Detainer was lawful. *Doc. 81* at 4. The Federal Defendants, on the other hand, have taken the position that an Immigration Detainer is merely a request and not a lawful mandate. *See Doc. 63* (Answer to Third Amended Complaint) at ¶ 17 (admitting that "an Immigration Detainer is nothing more than a request to a law enforcement agency or detention facility and is not legally enforceable."). Exploration of whether and when the Federal Defendants took the position that Immigration Detainers are lawful mandates will cast light on this dispute between the Federal and County Defendants.

However, the Court finds that the proposed time period (2003-present) is overly-broad, and will restrict the time period for the interrogatory from 2011 to the present. Thirteen years' worth of information is not proportional to the needs of this case, in which the named Plaintiff was detained in 2012 and the proposed class would consist of individuals detained on or after November 19, 2011. However, if at some later date the County Defendants are able to establish that additional dates are relevant and proportional to the needs of this case, the Court will consider broadening the time period at issue.

With this narrowed time period in mind, the Court holds that the interrogatories as narrowed are not overly-burdensome. Federal Defendants have laid out in detail the process by which they can comply with County Defendants' interrogatories; and, given the narrowed scope of the interrogatories, the Court does not find that requiring the Federal Defendants to perform this search process is overly burdensome. Importantly, nowhere in Mr. Macias' declaration describing the search to be conducted does he state that completing said process is unduly burdensome. *See Doc. 89-1.* As rightly put by the County Defendants, "[t]here is no doubt the process required to obtain the requested information will be a burden to Federal Defendants, but it is not overly burdensome." *Doc. 97* at 2. Accordingly, the Court will order the Federal Defendants to completely answer Interrogatories three, four and five, as narrowed.

### B)  Interrogatory No. 9

The County Defendants' Motion explains that the parties have reached an agreement as to their ninth interrogatory, *Doc. 81* at 7, and the Federal Defendants formally withdrew their objections of overly broad, unduly burdensome, not relevant and not proportional to the needs of this case in their Response. *Doc. 89* at 6.

### C)  Interrogatory No. 11

The County Defendants' eleventh interrogatory requests a description of "the process by which Federal Defendants determined that an Immigration Detainer would or would not be issued regarding a particular individual." *Doc. 81-1* at 8. Federal Defendants objected to the breadth of the interrogatory because it seeks information predating the named Plaintiff's Immigration Detainer and the putative class. Further, Federal Defendants "object to this interrogatory to the extent that it seeks law

6

enforcement sensitive information protected by the deliberative process privilege." *Id.* at 9. Without waiving these objections, Federal Defendants provided a general description of the process used in determining whether to issue an Immigration Detainer. *Id.*

Acknowledging that the Federal Defendants have answered the interrogatory for the period of November 19, 2011, to the present, County Defendants request an answer for the period from 2003 to November 19, 2011. *Doc. 81* at 7; *Doc. 97* at 3. As with interrogatories three, four and five, Federal Defendants' primary over-breadth objection is that information predating November 19, 2011, is not relevant or proportional to the needs of this case because it predates the proposed class. *Doc. 89* at 6-7. The Court agrees. As with Interrogatories 3, 4 and 5, the Court will limit the date range for Interrogatory 11 from 2011 to the present. This limitation allows the County Defendants to analyze the historical evolution of Federal Defendants' policies concerning Immigration Detainers for the relevant time period, without disproportionately burdening the Federal Defendants. Moreover, as with Interrogatories 3, 4 and 5, the Court's ruling is without prejudice to County Defendants' ability to ask for an enlarged time period, assuming they are able to demonstrate proportionality, at a later date.

County Defendants also challenge Federal Defendants' assertion of the deliberative process privilege. *Doc. 81* at 8.[2] "[T]he deliberative process privilege protects documents, such as advisory opinions, recommendations, and deliberations, that reflect how government decisions are made." *Stewart v. Dept. of Interior*, 554 F.3d 1236, 1239 (10th Cir. 2009). The deliberative process privilege is designed to prevent

---

[2] "Federal Rule of Evidence 501 provides that privileges in federal-question cases generally are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006).

injury to the quality of agency decisions by insuring that frank discussions within the agency are not inhibited by public disclosure. *See NLRB v. Sears. Roebuck and Co.*, 421 U.S. 132, 150-51 (1975). The privilege "'rests on the obvious realization that officials will not communicate candidly if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.'" *Casad v. U.S. Dep't of Health and Human Servs.*, 301 F.3d 1247, 1251 (10th Cir. 2002) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)). The privilege also "serves to prevent the premature disclosure of proposed policies, and avoids 'misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.'" *Trentadue v. Integrity Comm.*, 510 F.3d 1215, 1226 (10th Cir. 2007) (quoting *Coastal States Gas Corp.v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). To fall within the deliberative-process privilege, information must be pre-decisional in nature and must form part of the agency's deliberative process. *See NLRB*, 421 U.S. at 150-52. "The deliberative process privilege is construed narrowly and to qualify for the privilege, the government has the burden of demonstrating 'precise and certain' reasons for preserving confidentiality of the materials at issue." *Ctr. for Biological Diversity v. Norton*, 336 F. Supp. 2d 1155, 1159 (D.N.M. 2004) (citing *Greenpeace v. National Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000)).

The Federal Defendants do not provide any information in support of their assertion of the deliberative process privilege, or argue why it should apply to the

County Defendants' interrogatory. *See Doc. 89* at 6-7. The Federal Defendants have

not explained why withheld information is pre-decisional or deliberative. Nor have the

Federal Defendants cited "precise and certain" reasons for preserving the confidentiality

of the information at issue. The Court will accordingly overrule this objection and require

Federal Defendants to fully answer the interrogatory as limited herein.

### D)  *Interrogatory No. 14*

The final interrogatory at issue in the County Defendants' Motion requests that

the Federal Defendants "identify and explain the reasons for the change(s) to the

Immigration Detainer form and policy promulgated in or around December 2012,

specifically including the reason(s) for changing the Detainer form checkbox labeled

"[i]nitiated an investigation to determine whether this person is subject to removal from

the United States" to "[d]etermined that there is reason to believe the individual is an

alien subject to removal from the United States." *Doc. 81-1* at 10. Federal Defendants

objected to this interrogatory on the grounds that "it calls for information protected by

the deliberative process privilege, law enforcement privilege, attorney-client

communications privilege, and the attorney work product doctrine." *Id.* Without waiving

these objections, the Federal Defendants provided three websites where it maintained

some of the information related to this interrogatory can be found. *Id.* at 11. Federal

Defendants elaborate on the contents of these websites in their Response, explaining

that one contains a memorandum authored by former ICE Director John Morton which

they maintain "provides the reasoning for the changes made to the Form I-247 in

December 2012." *Doc. 89* at 8. However, County Defendants maintain that this

information is not responsive to the interrogatory and "does not address the pertinent issue." *Doc. 97* at 4.

The Court agrees that the information provided by the Federal Defendants does not adequately address the interrogatory. In addition to an explanation for the changes to the Immigration Detainer form and policy "promulgated in or around December 2012," *Doc. 81-1* at 10, County Defendants are asking for the rationale behind a specific language change on the Immigration Detainer form. While former Director Morton's memorandum provides general guidance as to the form and the rationale behind the Federal Defendants' policy change, the memorandum does not explain why the Detainer form checkbox label change was undertaken. Accordingly, absent the application of a privilege, the Federal Defendants must fully answer the interrogatory.

County Defendants first challenge the assertion of the deliberative process privilege, arguing that the Federal Defendants have not shown how the information sought is predecisional or deliberative. *Doc. 81* at 9. "As to the first criterion, we must distinguish between 'predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision, which are exempt from disclosure, and postdecisional memoranda setting forth the reasons for an agency decision already made, which are not.'" *Trentadue*, 501 F.3d at 1227 (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). "The second prong, whether a document is 'deliberative,' has proven more difficult to cabin." *Id.* (citation omitted). What is clear, however, is that purely factual material is not considered deliberative, unless it is "inextricably intertwined with policy-making processes." *Id.* (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1119 (9th Cir. 1988)). "[C]ourts

10

must be careful not to become victims of their own semantics" in drawing the

deliberative/factual distinction as "in some circumstances the disclosure of even purely

factual material may so expose the deliberative process within an agency that it must be

deemed exempted." *Id.* (quoting M*ead Data Cent., Inc. v. U.S. Dep't of the Air Force*,

566 F.2d 242, 256 (D.C. Cir. 1977)). As noted above, the deliberative process privilege

is construed narrowly and the government bears the burden of demonstrating "precise

and certain" reasons for preserving confidentiality of the materials at issue." *Ctr. for

Biological Diversity*, 336 F. Supp. 2d at 1159.

      In support of the privilege, Federal Defendants provide the Declaration of Phillip

Miller, Deputy Executive Associate Director of Enforcement and Removal Operations.

*See generally Doc. 89-3*. In his declaration Mr. Miller states:

> As the head of a federal law enforcement agency, former Director Morton
> was responsible for establishing policies for ICE. The development of
> those policies involve open and frank communications with ICE personnel
> regarding the specific needs of agency personnel and their federal, state,
> local and tribal law enforcement partners. In order to enhance the quality
> of the agency's decisions regarding its law enforcement operations, these
> communications must remain confidential. To the extent that former
> Director Morton received briefings and participated in discussions
> regarding the development of the DHS Form I-247 and/or the ICE
> Detainer Guidance both released in December 2012, information
> regarding those communications is being withheld pursuant to the
> deliberative process privilege.

*Doc. 89-3* at 4-5.

      The question is whether this statement demonstrates "precise and certain"

reasons for preserving the confidentiality of the materials at issue. The Court finds that it

does. First, it is clear that the information sought by the County Defendants is

predecisional, as it logically predated the Federal Defendants' shift in policy. Moreover,

the information sought is inherently deliberative. County Defendants are seeking

"information about why policy changes were made[.]" *Doc. 97* at 5. Federal Defendants'

rationale for changing the policies at issue assumedly takes the form of "advisory

opinions, recommendations, and deliberations," which are protected.

County Defendants also challenge Federal Defendants' assertion of the attorney-

client privilege and work product doctrine. *Doc. 81* at 9. In support of these privileges

the Federal Defendants again rely on the Miller declaration, which states:

> DHS and ICE attorneys consulted and advised DHS and ICE
> management on the development of DHS I-247 forms and ICE detainer
> policy, including in 2012 when DHS released an updated I-247 form and
> ICE released Director Morton's detainer guidance. Those communications
> were confidential and concerned analysis and recommendations based on
> the ongoing litigation brought against the Federal Defendants at that time.

*Doc. 89-3* at 4.

On this basis, the Federal Defendants argue that "because the changes to the

Form I-247 were vetted internally by attorneys within both ICE and DHS, as well as with

attorneys from the Department of Justice – and therefore played a role in DHS' and

ICE's decision to change the detainer policy – the broad nature of the interrogatory

inherently seeks information protected by the attorney-client privilege." *Doc. 89* at 9.

"The attorney-client privilege is 'the oldest of the privileges for confidential

communications known to the common law.'" *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d

1179, 1185 (10th Cir. 2006) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389

(1981). "The burden of establishing the applicability of the attorney-client privilege rests

on the party seeking to assert it." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183

(10th Cir. 2010) (citation omitted). Not all communications between an attorney and

client are privileged, only confidential communications requesting or giving legal advice.

*Fisher v. U.S.*, 425 U.S. 391, 403 (1976). "'The mere fact that an attorney was involved

in a communication does not automatically render the communication subject to the attorney-client privilege,' . . . rather, the 'communication between a lawyer and client must relate to legal advice or strategy sought by the client[.]'" *In re Grand Jury Proceedings*, 616 F.3d at 1183 (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir.1995); *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir.1998)).

The Miller declaration makes clear that the Federal Defendants consulted agency attorneys when revising the Immigration Detainer form and modifying the underlying policy. To the extent that these conversations involved the procurement of legal advice, they are protected, and there is no allegation that the Federal Defendants have waived the privilege. Therefore, the Court will not require the Federal Defendants to answer the interrogatory to the extent that the answer would reveal attorney-client communications.

Finally, Federal Defendants also argue that the Miller declaration supports their assertion of the work-product doctrine. The work-product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3)(A), which provides: "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d at 1186 (quoting *United States v. Nobles*, 422 U.S. 225, 238, 95 S. Ct. 2160 (1975)). The attorney work-product doctrine "is intended only to guard against divulging the attorney's strategies and legal impressions." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). There is no

temporal limit to the work product doctrine; that is, "attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared." *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 28 (1983).

According to the Miller Declaration, Federal Defendants changed the Immigration Detainer form and its underlying policy in response to litigation. Thus, the rationale behind the Federal Defendants' shift in policy inherently reflects the mental processes of agency attorneys tasked with reformulating the Immigration Detainer form and policy in response to litigation. *See Citizens Progressive All. v. U.S. Bureau of Indian Affairs*, 241 F. Supp. 2d 1342, 1360 (D.N.M. 2002). Accordingly, the Court will sustain the Federal Defendants' objection to the interrogatory on this ground as well.

## IV.   CONCLUSION

As set forth herein, the Court finds that Defendant San Juan County's Motion to Compel Federal Defendants to Provide Discovery Answers (*Doc. 81*) should be granted in part.

**Wherefore,**

**IT IS HEREBY ORDERED** within fourteen (14) days of this Order, the Federal Defendants must fully answer Interrogatory numbers 3, 4, 5 and 11 as they have been narrowed herein. In all other respects, the County Defendants' Motion is denied.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE